UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

_____

In re                                                    Chapter 13
Carl Edward Segebrecht and                               Case No. 15-22396-svk
Linda Marie Segebrecht,
                    Debtors.

_____

## DECISION AND ORDER ON DEBTORS' OBJECTION
## TO CLAIM FILED BY RED WING MEADOWS OWNERS ASSOCIATION

_____

Can by-laws of a homeowners association create a secured lien for attorneys' fees incurred in litigating with the homeowner in litigation won by the homeowner? In this case, the homeowners argue that only unpaid assessments, not attorneys' fees, constitute a lien on their property.

On March 16, 2015, Carl and Linda Segebrecht (the "Debtors") filed a Chapter 13 bankruptcy petition. On April 20, 2015, Red Wing Meadows Owners Association, Inc., (the "Association") filed a secured claim for $4,709.76, consisting of $250 in unpaid association dues and late fees and $4,459.76 in attorneys' fees. (Proof of Claim No. 4, hereinafter, the "Claim".) On May 6, 2015, the Debtors filed an objection to the attorneys' fees portion of the Association's claim. (ECF No. 11.) The Debtors concede that $250 of unpaid assessments and late fees are secured by a valid lien on the Debtors' property, but contend that the Association's attorneys' fees are not perfected by a lien and therefore are allowable only as an unsecured, non-priority claim. (*Id.*) The Association filed a response on May 11, 2015, arguing that the Association's By-Laws create a secured lien on the property for not only the unpaid assessments, but also for "interest and actual costs of collection." (ECF No. 13.) The Association contends that attorneys' fees are included in the definition of the "costs of collection." (*Id.*)

The Court held a hearing on July 14, 2015 and took the issue under advisement. (ECF No. 22.) This Decision and Order constitutes the Court's findings of fact and conclusions of law.

STATEMENT OF FACTS

At the hearing, the parties stipulated that the facts are not in dispute. The Debtors' residence is located in the Red Wing Meadows Subdivision in Franklin, Wisconsin. The subdivision contains a number of single-family lots governed by the By-Laws of Red Wing Meadows Owners Association, Inc. (the "By-Laws"). (Some, but not all, pages of the By-Laws are attached to the Claim.) In addition to establishing various rules and restrictions concerning the homes in the subdivision, the By-Laws empower the Association to levy assessments and charge each owner annual dues. The By-Laws state: "All annual and special assessments, until paid, together with interest and actual costs of collection, constitute a lien for the benefit of the Association on the Lots on which they are assessed." (By-Laws at 8.) The By-Laws go on to provide that "the Association may file liens therefor and bring suit for and on the behalf of the Association, as representative of all members, to enforce collection of such delinquencies or to foreclose the lien therefor, as provided by law and the Protective Covenants, and there shall be added to the amount due: (1) a $50.00 late fee, (2) an additional $15.00 late fee per day until the outstanding charges and assessments have been paid in full, and (3) the costs of collection and interest, together with attorney fees." (*Id.* at 8 – 9.)

In addition to the By-Laws, Protective Covenants apparently govern aspects of ownership of property in the subdivision. The Association attached a few select pages of an unrecorded copy of the Protective Covenants to the Claim. (Claim at 9 – 11.) The Protective Covenants state: "No violation or breach of any covenant, condition, restriction or other term or provision of these Protective Covenants shall, under any circumstances cause a Lot Owner to lose title to a

Lot." (Protective Covenants at 18.) The Protective Covenants further note that "Enforcement of the Protective Covenants shall be by proceedings at law or in equity against any person or persons violating or attempting to violate any provisions of these Protective Covenants, either to restrain violation or to recover damages, or both." (*Id.*)

At the hearing, the Association did not dispute that the Debtors did not pay their 2014 Association dues of $100 because they objected to how the Association was using the funds. The Association filed a lien on the Debtors' property for $478.09, which included the unpaid assessment, a late fee, and the attorneys' fees associated with sending a demand letter. Rather than attempt to foreclose the lien, the Association filed a small claims action to recover the $478.09, but the Debtors won the case. The Association pursued *de novo* review of the small claims court dismissal of its action. In the circuit court, the Association filed a motion for summary judgment. Before the hearing on the summary judgment motion, the Debtors filed their Chapter 13 bankruptcy petition. While the circuit court case was pending, another $100 of Association dues became payable.

## ANALYSIS

The Debtors argue that the Association's attorneys' fees are not allowable as a secured claim for three reasons: (1) only the unpaid association dues and late fees are secured; (2) the attorneys' fees are unreasonable; and (3) at this point in the litigation, the Association is not entitled to the attorneys' fees. The Association counters that the language of the By-Laws creates the lien, and that the attorneys' fees are reasonable. The Court agrees with the Debtors that the Association's attorneys' fees are not secured by a perfected lien.

The Association points to the language in the By-Laws that states "all annual and special assessments, until paid, together with interest and actual costs of collection, constitute a lien for

3

the benefit of the Association on the Lots on which they are assessed." (Claim at 8.) Bankruptcy Code § 506(a) "describes the extent to which an allowed claim is to be treated as a secured claim for purposes of the Code, as well as how a secured claim is to be valued." *See* 4-506 *Collier on Bankruptcy* ¶ 506.03 (16th ed. 2014). In order to determine whether a creditor holds a secured claim, a bankruptcy court should first decide whether the claim is secured as a matter of nonbankruptcy law. *Id.*

In Wisconsin, Wis. Stat. § 779.70 governs homeowners association liens. Section 779.70(1) provides that a nonprofit membership corporation organized for the purpose of maintaining or preserving properties which its members have common rights to use and enjoy has the power to submit to its membership an annual budget of the expenditures which it proposes to make for the coming year. The budget can include officer salaries, fees for auditing the corporate books and legal fees for the governing board. Under § 779.70(2), upon the adoption and approval of the annual budget by majority vote of the members, the governing board may levy an assessment known as a maintenance assessment against all of the property owners. Section 779.70(3) states that the governing board may declare the assessments due and payable after 30 days from the date of the levy. Wis. Stat. § 779.70(4) – (6) provides for collection of the levy:

> (4) In the event that an assessment levied under sub. (2) against any lot remains unpaid for a period of 60 days from the date of the levy, the governing board of the levying corporation may, in its discretion, file a claim for a maintenance lien against the lot. All of the following apply to a claim for lien under this subsection:
>
> (a) The claim may be filed at any time within 6 months from the date of the levy.
>
> (b) The claim shall be filed in the office of the clerk of the circuit court of the county in which the lands affected by the levy lie.

4

>       (c) The claim shall contain a reference to the resolution authorizing the
> levy and the date of the resolution, the name of the claimant or assignee, the name
> of the person against whom the assessment is levied, a description of the property
> affected by the levy and a statement of the amount claimed.
>
>       (d) The claim shall be signed by the claimant or the claimants attorney,
> need not be verified, and may be amended, in case an action is brought, by court
> order, as pleadings may be.
>
>       (5) The clerk of circuit court shall enter each claim for a maintenance lien
> in the judgment and lien docket immediately after the claim is filed in the same
> manner that other liens are entered.  The date of levy of assessment will appear on
> the judgment and lien docket instead of the last date of performance of labor or
> furnishing materials.
>
>       (6) When the corporation, described in sub. (1) has so filed its claim for
> lien upon a lot it may foreclose the same by action in the circuit court having
> jurisdiction thereof, and §§ 779.09, 779.10, 779.11, 779.12 and 779.13 shall apply
> to proceedings undertaken for the enforcement and collection of maintenance
> liens as described in this subsection.

The Wisconsin statutes (including those referenced in Wis. Stat. § 779.70(6)) do not provide for the inclusion of attorneys' fees to collect the maintenance lien as part of the lien. Compare this omission to the statutory provision for condominium liens in Wis. Stat. § 703.165: "All assessments, until paid, together with interest on them and actual costs of collection, constitute a lien on the units on which they are assessed, if a statement of lien is filed within 2 years after the date the assessment becomes due." And, the homeowner association lien statutes of other states expressly provide for attorneys' fees to be included as part of the lien. For example, N.C. Gen. Stat. § 47F-3-116 provides:

> (a) Any assessment attributable to a lot which remains unpaid for a period of 30
>     days or longer shall constitute a lien on that lot when a claim of lien is filed of
>     record in the office of the clerk of superior court of the county in which the lot
>     is located in the manner provided in this section.  Once filed, a claim of lien
>     secures all sums due the association through the date filed and any sums due
>     to the association thereafter.  Unless the declaration provides otherwise, fees,
>     charges, late charges, and other charges imposed pursuant to G.S. 47F-3-102,
>     47F-3-107, 47F-3-107.1, and 47F-3-115 are subject to the claim of lien under
>     this section as well as any other sums due and payable to the association under

5

the declaration, the provisions of this Chapter, or as the result of an arbitration, mediation, or judicial decision.

The Association argues that the By-Laws give the Association a lien for its attorneys' fees but cites no authority for how a provision in an unrecorded document could create an encumbrance on real estate. Assuming the By-Laws are an agreement, the Seventh Circuit Court of Appeals has noted that "Whether an agreement creates a lien depends upon state law." *In re Martin Grinding & Machine Works, Inc.*, 793 F.2d 592, 594 (7th Cir. 1986) (citing *Butner v. United States*, 440 U.S. 48, 54-57 (1979)). Under Wisconsin law, unrecorded real estate conveyances are not valid against third parties. *See* Wis. Stat. § 706.08(1)(a).

The Protective Covenants attached to the Claim may have been recorded, but they do not provide for the enforcement or collection of special assessments or the inclusion of attorneys' fees in the Association's lien. The Protective Covenants contemplate enforcement through "proceedings at law or in equity . . . either to restrain violation or to recover damages, or both." (Claim at 18.) This language suggests that litigation against the Debtors is necessary to recover for violations of the Covenants. Moreover, the Protective Covenants state: "No violation or breach of any covenant, condition, restriction or other term or provision of these Protective Covenants shall, under any circumstances cause a Lot Owner to lose title to a Lot." (*Id.*) Since foreclosure of a lien could lead to a loss of title, under this provision, arguably no lien is created at all for violating the Protective Covenants.

In summary, the Wisconsin maintenance lien provisions do not specify that attorneys' fees for collecting assessments are includable in the lien. Possibly a court overseeing the foreclosure of the lien could award attorneys' fees, but no such award was granted in this case. The By-Laws arguably provide for the inclusion of attorneys' fees in collecting the assessments, but the By-Laws are not recorded, and over the Debtors' objections, cannot create a valid lien on

6

the Debtors' real property. The Protective Covenants not only do not grant a lien, they provide that the Debtors cannot lose title to their lot for violating the Covenants. The Covenants suggest that the Debtors, not their property, are liable for violations of the Covenants. This is the antithesis of creating a lien. Since the Association's litigation with the Debtors had not been decided in the Association's favor as of the filing of this bankruptcy case, the Association's attorneys' fees claim is merely a general unsecured claim.

## CONCLUSION AND ORDER

For these reasons, the Association's claim for attorneys' fees does not constitute a lien against the Debtors' property, and is not an allowed secured claim in this bankruptcy case.

IT IS THEREFORE ORDERED: the Claim is allowed as a secured claim in the amount of $250 and as a general unsecured claim in the amount of $4,459.76.

Dated: August 13, 2015

By the Court:

*Susan Kelley*
Susan V. Kelley
Chief U.S. Bankruptcy Judge